DECISION
This case is before the Court on the motion for trust reformation by the Bank of America, N.A. ("BOA"). The bank is the Successor Trustee to a trust created by George Bucklin by a Will dated December l0, 1914 and amended by a codicil of February 1, 1918. The trust currently owns real estate in the Town of Hopkinton, held for the exclusive benefit of the Rhode Island Boys Scouts. The Trustee seeks three reformations through this petition:
 1. To allow the Trustee to transfer real estate held exclusively for the Rhode Island Boys Scouts to the Rhode Island Boy Scouts.
 2. To substantially modify the method of investment of its portfolio to alternatively define Trust income.
 3. To remove the requirement that the Trust deliver rifles as awards for certain Boy Scout competitions.
 Facts and Travel
Mr. Bucklin passed away a resident of Providence, Rhode Island on August 28, l9l8. His Last Will and Testament and a Codicil were probated in the Providence Municipal Court on October l5, l9l8. The trust provisions were contained in those Estate documents.
One provision of the Trust provides that the Trustee: *Page 2 
 "Take possession of all the residue of my estate (hereinafter referred to as the trust estate) and to apply such part of the principal of the trust estate, not to exceed one-half thereof, as my said trustee may approve to the purchase of land and the erection of a building thereon for the use of said Rhode Island Boy Scouts, and I will and direct that the plans and specifications for such building shall be subject to the approval of the Trust Committee of said Rhode Island Hospital Trust Company, and my Trustee shall cause said land so purchased to be conveyed to it to hold under these trusts and shall permit Said Rhode Island Boy Scouts to have the use and occupancy of the buildings and the grounds connected therewith free of rent, taxes and expenses of insurance and repairs."
Mr. Bucklin suggested that the building be used for artillery drills including target practice. On December ll, l930, the Rhode Island Boy Scouts transferred approximately 8.2 acres of real estate located within the adjoining camp to the Trust. This deed was never recorded and no separate lot was created for the parcel by the Town of Hopkinton. The Trust also constructed a building on the parcels in l931.
1. Transfer of Real Estate
The Trust property now constitutes a landlocked parcel in the middle of CampYawgoog in Hopkinton, Rhode Island. This parcel was created after additional property was deeded to the Trust, but the Trust never recorded the deed. Through time, the Trust and the Boy Scouts have created a parcel which may be in violation of modern subdivision and planning regulations. Accordingly, it may not be possible to record the deed.
The complaint's prayers specifically request permission for the Trustee to transfer real estate from the Trust to the Rhode Island Boy Scouts. It then requests an Order allowing for the execution of a Fiduciary Deed in fee simple to the Boy Scouts. *Page 3 
The language of the Trust already allows this conveyance already. The Trustees are empowered by the express language of the Trust:
 ". . . to take possession and charge of all said Trust estate and property, to keep the Trust real estate in good repair and order, and the improvements thereon insured against loss by fire, to keep the personal property invested in safe and productive securities, and at any time to sell the Trust real estate and personal property, or any part thereof, and invest the proceeds of such sale or sales in productive securities or real estate, or to alter or vary any of the investments, whether existing at the time of my decease or made afterwards." (p. 2, George Bucklin Will) (emphasis added).
Hence, the Trustees are already authorized to keep or to convey the real estate in their own reasonable discretion. While there is no objection to the sale, to authorize a specific conveyance, explicitly allowed within the terms of the Trust would be to encourage trustees to return to the Court to obtain permission where no permission is necessary. Nevertheless, as there is no objection to the modification, the Court will authorize the transfer. It is clearly within the intent of the Settlor.
2. Modification of Income Distribution
The Trustee also requests that the Trust be reformed to mirror a statute which allows for an alternative definition of income. (BOA's mem. p. 8.) G.L. 1956 § 18-4-29 allows for a "Total Return Unitrust" when the trust instrument meets certain conditions. The trust language itself prescribes certain annual bequests hence the Trust may already fall within the scope of this statute.[1]
Unfortunately, the BOA did not brief this issue at length.
Again, the trust documents are the primary evidence of the intent of the Settlor. The Settlor's intent should be respected and followed. The Court is inclined to follow the *Page 4 
requirements of the Settlor and the statutory mandate of the legislature, but not to extend the investment strategies any further or devise investment strategies at whim. While BOA seeks to "maximize both the present and future interests of the beneficiary" and finds the "traditional income standard too narrow in the current economic environment" (Pl's mem. at p. 8.), the Settlor is entitled to dictate the terms of how his money will be used and invested Modern practices may be effective in the present day, but by all appearances Mr. Bucklin's directives and the wise counsel of the Trustee have proven financially successful through time.
3. Firearms Requirements.
In BOA's Memorandum in Support of Plaintiff's Petition for Trust Reformation, BOA further seeks to reform the Trust so that it will "no longer require the Trustee to . . . maintain an indoor rifle range for use by children." (Pl.'s mem. p. 8.) This Court finds that the Trust need not be reformed to eliminate the requirement of an indoor rifle range because Mr. Bucklin merely `suggests' a rifle range. The Trustee already possesses discretion to forego the range. (Pl.'s mem. pp. 2. 5.)
In contrast, Mr. Bucklin states on page six of his Will that, "Idirect that the sum of at least Two Hundred Dollars ($200) be used annually in the purchase of such prizes, such as medals, crosses, etc., to be given to the Scouts for excelling in marksmanship . . . The Scout obtaining the highest score at the annual shooting match to receive a twenty-two caliber repeating Winchester rifle and case. (Will, p. 6) (emphasis added).
BOA suggests "the Trust must be reformed to no longer require the Trustee to distribute rifles to children . . ." (Pl.'s mem. p. 8.) In support, BOA cites the "well being of children and society's view of firearms," alleges that "[a]warding a rifle for marksmanship is no longer *Page 5 
reasonable in present day society," and suggests that "it is not even clear whether fulfilling the Settlor's request is legal." (Pl's mem. pp. 8. 9.) It produces no evidence in support of this contention.
Rhode Island statutes do not prohibit the possession, ownership, or use of firearms by persons under the age of 18 years old. G.L. 1956 §§ 11-47-30 — 11-47-34. Minors must be supervised by a qualified adult when using firearms, and must obtain a gun permit under some circumstances. G.L. 1956 §§ 11-47-33, 11-47-34. Additionally, it is unlawful to "sell, give, transfer, or convey any firearm to a person under eighteen (18) years of age . . . except for the limited purposes set forth in §§ 11-47-33 and 11-47-3 and with the prior approval or consent of the parents or legal guardian of the minor." Section 11-47-30. The limited purposes for which a firearm must be used, include "lawful hunting activity under the supervision of a parent or guardian or qualified adult . . . competitive and target shooting, participants in state militia activities, and minors participating in a basic firearms education program." Section 11-47-33.
Mr. Bucklin did not intend the Boy Scouts to break the law in order to comply with the terms of his Will. It can, therefore, already be assumed that the parent or guardian of a person under the age of eighteen now must give their permission for the Boy Scouts to give a rifle as an award to that particular scout. The minor may be required to obtain a license, and must use the rifle for lawful purposes, but none of these legal requirements "frustrates the intent of the original Settlor" as BOA alleges. (Pl.'s mem. p. 9.) To the contrary, Mr. Bucklin expressly directed, and clearly intended, Winchester rifles to be awarded to successful markspersons.
Mere disapproval of Mr. Bucklin's intent may be grounds for a prospective trustee to refuse to accept an appointment, but it is not a sufficient reason to ignore or reform the Trust. Again, it is the Settlor's intent that must be respected. Because awarding a rifle as a *Page 6 
marksmanship award can be implemented in a lawful manner, BOA's petition to eliminate the award of a rifle for marksmanship is denied.
4. Conclusion
BOA's motion for trust reformation to transfer the real estate is converted to a motion to confirm the sale of the real estate and said motion is granted. BOA's other requests to modify the Trust are denied.
[1] Counsel for the Boy Scouts suggested that the Trustee may already have the power to make this adjustment, pursuant to statute.